# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | CASE NO. 2:22-CR-0068 |
| vs. | : | JUDGE WATSON |
| ESKENDER GETACHEW, | : | |
| Defendant. | : | |

## MOTION FOR NEW TRIAL

Defendant Eskender Getachew, through undersigned counsel, respectfully requests this Court vacate the judgment of guilt and grant a new trial in the interest of justice pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Defendant submits that trial counsel was ineffective in the plea negotiation stage, rendering him without assistance of counsel as required under the Sixth Amendment of the United States Constitution. The reasons in support of this Motion are set forth in the following Memorandum.

Respectfully submitted,
**Taft Stettinius & Hollister LLP**

**/s/ David H. Thomas**
DAVID H. THOMAS
Ohio Supreme Court No. 0071492
P: (614) 334-6199
dthomas@taftlaw.com

**/s/ Lizett Schreiber**
LIZETT M. SCHREIBER
Ohio Supreme Court No. 0084708
41 South High Street, Suite 1800
Columbus, Ohio 43215
P: (614) 334-6139
F: (614) 221-2007
lschreiber@taftlaw.com

Counsel for Defendant

**MEMORANDUM**

**A. FACTUAL AND PROCEDURAL BACKGROUND**

Dr. Eskender Getachew was indicted by a grand jury in the Southern District of Ohio on April 28, 2022 for 15 counts of Unlawful Distribution of Controlled Substances in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(E)(i), 841(b)(2) and 18 U.S.C. § 2. (ECF Doc. 2, Indictment). Dr. Getachew entered a plea of not guilty on June 6, 2022, and retained attorney Mark O'Brien to represent him. (ECF Doc. 16, Minute Entry Bond Hearing and Arraignment on Indictment). The case was eventually set for trial on June 12, 2023.

The Government submitted a written plea offer to Attorney Mark O'Brien via e-mail on April 21, 2023. (Exhibit A, Offer Email). The offer essentially was to have Defendant plead guilty to Count 1 of the indictment and agree to a guideline calculation that would place the anticipated offense level at 6, and an anticipated sentencing range of 0-6 months. (*Id.*) In return, the government would dismiss the remaining Counts and recommend the low end of the guideline range the Court would ultimately calculate, likely probation. (*Id.*) Attorney O'Brien forwarded the email to Defendant on April 24, 2023, with a paragraph summarizing the offer while also speculating that with this guilty plea, "the sentence is in the hands of the judge. He could sentence you to 10 years in prison. He does not have to accept the government's recommended sentence." (*Id.*). Attorney O'Brien continued his risk calculation by stating, "if we do not prevail at trial, you could receive a sentence that would essentially place you in prison for the remainder of your life (10 years per count = 150 years, if you are convicted on all counts)." *Id.*

Upon receipt of the email from Attorney O'Brien outlining the plea offer, Defendant requested a conference call with Attorney O'Brien and his family, and suggested a time and date

2

on which to have the call. (Exhibit B, Email from Defendant Requesting Meeting). Attorney O'Brien acknowledges that he never met with Defendant or his family to review the plea offer, and facing a deadline, Dr. Getachew sent Attorney O'Brien a text message the evening of April 30, 2023 indicating he did not wish to accept the plea offer after conferring with his family. (Exhibit C, Email with Text Rejection).

In preparation for trial, a final pretrial conference was conducted on May 30, 2023. (Minute Entry, 5/30/2023). As part of the pretrial conference, the Government referenced a plea offer communicated to Attorney O'Brien via e-mail on April 21, 2023. (ECF Doc. 75, pp.26-28). The Government again the listed terms of the plea agreement on the record, "[t]hat the defendant would plead guilty to Count 1 of the Indictment and agree to a Total Offense Level of 6 based on the drug weight associated with only the prescription charged in Count 1. In return, the United States offered it would dismiss Counts 2 through 15 and recommend a sentence at the low end of the guideline range. For example, probation." (*Id.* at p.27). The Government indicated they communicated said offer in an e-mail with a deadline of May 5, but did not receive a response from Attorney O'Brien. *Id*. In response, Attorney O'Brien stated, "the offer said, Your Honor, if we did not respond it would be considered rejected. So I thought that was sufficient. But my client does reject the offer. He's done nothing wrong and he doesn't want to say he did something wrong." (*Id.* at pp.27-28). Dr. Getachew did not speak at this pretrial conference. (*Id*.)

Dr. Getachew's case proceeded to trial on June 12, 2023. (Minute Entry for Proceedings). On June 22, 2023, the jury returned verdicts of Guilty to Counts 1 through 11 of the indictment, and Not Guilty to Counts 12 through 15. (ECF Doc. 62, Jury Verdict). The final presentence investigation report is due October 18, 2023. (ECF Doc. 85, Order granting Motion for Extension of Time to File). The initial presentence report was filed on September 14, 2023. (ECF Doc. 88,

3

Initial Presentence Investigation Report). The initial report calculates Dr. Getachew's total offense level as 20, with a guideline provision of 33 to 41 months in custody. (*Id.* at p.22).

### B. LAW AND ARGUMENT

Dr. Getachew now respectfully requests that this Court set aside the judgment of guilt and order a new trial in the interest of justice pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Defendant submits he received ineffective assistance of counsel in the plea negotiation process, depriving him of his right to counsel under the Sixth Amendment of the United States Constitution.

#### 1. The Rule 33 Standard

Criminal Rule 33 states, in pertinent part, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. Rule Crim. Proc. 33(a). The rule "does not define "interest[] of justice" and the courts have had little success in trying to generalize its meaning." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010), quoting *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). Nevertheless, case law is illustrative regarding instances in which the interest of justice requires a new trial. "[I]t is widely agreed that Rule 33's "interest of justice" standard allows the grant of a new trial where substantial legal error has occurred." *Id.* at 373. A violation of an accused's "Sixth Amendment right to effective assistance of counsel clearly meets this standard." *Id.* at 373-74.

Defendant's Sixth Amendment right to effective assistance of counsel at the plea negotiation stage was violated, and he is therefore entitled to a new trial in the interest of justice pursuant to Rule 33.

#### 2. Ineffective Assistance of Counsel

The Sixth Amendment recognizes the right to the assistance of counsel because it

4

recognizes counsel's critical role in producing just results within an adversarial system. An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that a trial is fair. *Strickland v. Washington*, 466 U.S. 668, 685 (1984), 104 S. Ct. 2052, 80 L. Ed. 2d 674. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 692–693.

The Supreme Court of the United States established a two-prong test to determine whether counsel was ineffective in a criminal case in *Strickland*. "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 693. The Supreme Court extended the *Strickland* test to cover plea bargaining as critical component of the trial process, stating "the same two-part standard seems to us applicable to ineffective-assistance claims arising out of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985), 106 S. Ct. 366, 88 L. Ed. 2d 203.

The Supreme Court further clarified the right to counsel in the plea bargaining stage in two decisions released together. First, the Court held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, 566 U.S. 134, 145 (2011), 132 S. Ct. 1399, 182 L. Ed. 2d 379. Second, the Court determined when a defendant has been offered a plea, he also has "the right to effective assistance of counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012), 132 S. Ct. 1376, 182 L. Ed. 2d 398. A fair trial after rejecting an offer does not preclude prejudice from ineffective assistance during the plea stage. "Even if the

trial itself is free from constitutional flaw, the defendant who goes to trial instead of taking a more favorable plea may be prejudiced from either a conviction on more serious counts or the imposition of a more severe sentence." *Id.* at 166.

The Sixth Circuit has interpreted the preceding cases to outline specific plea bargain protections for defendants and adopted the ineffective assistance test under *Strickland.* In order to prevail on a claim of ineffective assistance of counsel, a "petitioner must establish two elements: (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different." *Griffin v. United States*, 330 F.3d 733, 736 (2003), quoting *Strickland*. Further, "[t]he *Strickland standard* applies to guilty pleas as well." *Id*. Taken in combination, it is clear that the Sixth Amendment right to counsel is present in the plea negotiation process, and ineffective assistance during the plea stage cannot be cured by a fair trial.

**Prong 1 – Performance below an objective standard of reasonableness**

Counsel for criminal defendants have a number of duties outlined in state bar rules and national model rules through the American Bar Association. The basic duties, however, "neither exhaustively define the obligations of counsel nor form a checklist for judicial evaluation of attorney performance. In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Strickland* at 688. "A court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 689. The *Strickland* court cites to several sources to demonstrate the first prong of this test, such as the American Bar Association Guidelines for Criminal Defense, while recognizing that no particular set of rules can encompass every circumstance which may arise in

6

representation. Essentially, the Court determined, "the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id.* at 688.

As outlined in *Strickland*, we may turn to the ABA Standards for the Defense Function as a guideline for minimum standards of competency. ABA Standard 4-5.1 states, in advising the client:

> (c) Defense counsel should promptly communicate to the client every plea offer and all significant developments, motions, and court actions or rulings, and provide advice as outlined in this Standard…
>
> (e) Defense counsel should provide the client with advice sufficiently in advance of decisions to allow the client to consider available options, and avoid unnecessarily rushing the accused into decisions.

ABA CRIM. JUST. STANDARDS FOR THE DEFENSE FUNCTION (4th ed., 2017). In addition, the continuing duties of defense counsel include:

> (d) a duty to communicate and keep the client informed and advised of significant developments and potential options and outcomes;
>
> (e) a duty to be well-informed regarding the legal options and developments that can affect a client's interests during a criminal representation;
>
> (f) a duty to continually evaluate the impact that each decision or action may have at later stages, including trial, sentencing, and post-conviction review;

*Id* at Standard 4-1.3. Therefore, failure to inform and properly counsel a client on plea offers is evidence that the attorney's performance fell below minimum objective standards of the profession and deprived the defendant of counsel as guaranteed under the Sixth Amendment.

**Prong 2 – The prejudice prong.**

The second prong is referred to as the "prejudice" prong, and is satisfied if the petitioner can show a "reasonable probability" that the petitioner would have pleaded guilty given competent

advice. *Griffin* at 736. In determining whether there is a reasonable probability a petitioner would have pleaded guilty, "a substantial disparity between the penalty offered by the prosecution and the punishment called for by the indictment is sufficient to establish a reasonable probability that a properly informed and advised defendant would have accepted the prosecution's offer." *Giffin* at 737, quoting *Dedvukovic v. Martin*, 36 Fed. Appx. 795, 798 (6th Cir. 2002) (unpublished). The Court further explains, "[i]n *Dedvukovic,* we found that where the defendant swore that his attorney never explained the significance of the government's plea offer to him, his attorney had no indication in her file that she had properly advised him of the offer and could not recall having done so (though it was her customary practice to do so), and there was a substantial disparity between the penalty offered by the government and the penalty called for by the indictment, the defendant showed a reasonable probability that he would have pleaded guilty had he received proper advice." *Id.* at 738. In these situations, there is no need for further proof of Defendant's state of mind at the time of plea bargain.

One can presume a different outcome when there is a large disparity between the potential sentence if convicted at trial and the plea offer before proceeding to trial. This satisfies the second prong of the ineffective assistance analysis. Denial of the charges throughout the proceedings is also not sufficient to overcome the presumption that Defendant would have accepted the offer if properly counseled. Defendants claim their innocence right up until the guilty plea; to do otherwise would deprive defendants of their ability to make any deal with the government, and would go against their Fifth Amendment rights to maintain their innocence throughout trial. *Griffin* at 737, *see also Sawaf v. United States*, 570 Fed. Appx. 544, 548-549 (6th Cir. 2014), *United States v. Morris*, 470 F.3d 596, 603 (6th Cir. 2006). Simply because a Defendant has stated they have done nothing wrong does not determine that they would not have plead guilty under favorable

conditions. *See, North Carolina v. Alford*, 400 U.S. 25 (1970), 91 S.Ct. 160 (1970), 27 L.Ed.2d 162.

The Sixth Circuit has determined on multiple occasions that failing to thoroughly advise a client regarding a plea offer and failing to inform the client of possible sentencing penalties in the plea stage satisfy both prongs the *Strickland* test, constituting ineffective assistance of counsel and resulting in prejudice to the defendant. *See*, *Griffin, supra*; *Dedvukovic, supra*; *Morris, supra* (failure to advise on applicable sentencing range per the Guidelines based on an erroneous estimate of an AUSA constitutes ineffective assistance, and assertions of innocence are not sufficient to overcome presumption of prejudice); *Smith v. United States*, 348 F.3d 545 (6th Cir. 2003) (a criminal defendant has a right to an explanation of the sentencing exposure the defendant will face as a consequence of exercising his trial or plea options; substantial disparities between plea offer and sentence exposure at trial are sufficient to presume prejudice); *Sawaf, supra* (failing to inform a defendant of sentencing exposure falls below objective guidelines, and failing to provide an estimated range of penalties from a trial conviction under the U.S. Sentencing Guidelines satisfies the prejudice presumption); *United States v. Wolfe*, No. 2:11-CR-33 (E.D. Tenn. May 31, 2012), 2012 U. S. Dist. LEXIS 75369 (evidence that defendant's attorney lacked a rudimentary understanding of the Guidelines or statutory scheme to provide proper advice constitutes ineffective assistance; wide disparity between plea offer and sentence is prejudice).

The few cases where the *Strickland* test has not been met can be easily distinguished from the above. *Compare Martin v. Artis*, No. 21-1825 (6th Cir. App. July 22, 2022), 2022 U.S. App. LEXIS 20382 (no formal plea offer was ever extended to defendant and he testified in his defense, leading the Court to conclude he would have rejected a plea offer); *Stiff v. Bell*, No. 08-14823 (E. D. Mich. June 22, 2011), 2011 U.S. Dist. LEXIS 67195 (rejected plea offer with a maximum

9

sentence below a mistaken lower sentencing calculation is evidence that difference in ranges on the high end would not have altered plaintiff's disposition toward plea); *Kohn v. United States*, Crim. Act. No. 91-80187 (E. D. Mich. June 14, 1999), 1999 U.S. Dist. LEXIS 10165 (no offer extended and advised of maximum sentencing at the initial appearance); *Moss v. United States*, No. 91-80187 (E. D. Mich. June 14, 1999), 1999 U.S. Dist. LEXIS 9215 (where evidence was presented that the defendant was properly advised of the plea offer). In each of these cases, either no offer was ever formally extended, the defendant testified in their defense or had some other indication there was not a reasonable probability the result would have been different, or there was affirmative evidence of proper advisement of a plea offer.

### 3. Defendant's decision to reject the plea offer and go to trial was not properly counseled.

Dr. Getachew's counsel during plea negotiations and communications in the plea bargaining stage was deficient and fell below an objective standard of reasonableness. Attorney O'Brien's failure to explain the significance of the plea offer and consequences of going to trial upon request by his client demonstrates a failure to perform at professional norms. This falls below an objective standard of reasonableness. The ABA Standards demonstrate that simply communicating an offer is not sufficient; counsel must also provide advice and guidance with sufficient time to consider all available options prior to making the decision to go to trial. Attorney O'Brien's single email relaying the offer did not explain the actual likelihood that Dr. Getachew would receive probation over the 10 year sentence he suggested would be possible. He stated he "does not have a crystal ball", and left Dr. Getachew on his own to make the decision with his family. At the final pretrial conference, counsel acknowledged receiving the offer and rejected it on the record; however, no explanation was provided to Dr. Getachew on the record about the actual liability exposure for going to trial.

10

Attorney O'Brien also failed to determine Dr. Getachew's likely penalty under the Federal Sentencing Guidelines; rather, he merely suggested the statutory maximum and calculated a sentencing range based on the number of counts, rather than utilizing the Federal Sentencing Guidelines to determine a realistic penalty. Even this estimation was inaccurate, as Mr. O'Brien stated Defendant would face 10 years per count. At Defendant's initial appearance, however, the Magistrate noted that for the Counts regarding a Schedule II substance, the maximum penalty was 20 years in prison, for Schedule III substances, the maximum penalty is 10 years in prison, and for Schedule IV substances, the maximum penalty is five years in prison. (Audio transcript of ECF Doc. 11, Initial Appearance). Notably, Magistrate Deavers counsels Dr. Getachew "there is also a law in federal court called the Federal Sentencing Guidelines; it sets forth recommended penalties for the offenses you've been charged with, so you if you're ever thinking about pleading guilty, speak to Mr. O'Brien about the potential penalties under the Federal Sentencing Guidelines as well." (*Id*. at 4:11-4:25). Mr. O'Brien's counsel regarding potential penalties was in no way founded in the maximum statutory penalties or the potential penalties under the Federal Sentencing Guidelines. Further, Attorney O'Brien failed to discuss the offer with Dr. Getachew prior to the expiration of the plea offer, despite his client's request and proposed date and time to do so. This caused Dr. Getachew to rush into a decision to reject the offer prior to the expiration based solely the advice of family instead of counsel.

Attorney O'Brien's actions during the plea negotiation process fall below the norm as he failed to communicate the potential options and outcomes in plea negotiations; failed to be well-informed of the legal options and developments, including possible ranges of sentencing and likelihood of those sentences; and failed to evaluate the impact that the decision or action of pleading guilty or going to trial would have at later stages. The only advice Dr. Getachew received

11

regarding a plea was the forwarded email from the Government with a paragraph of advice from Attorney O'Brien. He did not provide a possible range of sentencing liability if he were to lose at trial based on the Federal Sentencing Guidelines. He did not advise his client on the likelihood of the Court following a jointly recommended sentence. He did not advise his client on the possible effects on his medical or pharmacy license based on either a plea or a finding of guilt at trial. Based on the totality of the circumstances, it is evident that Mr. O'Brien's performance in plea negotiations was deficient and fell below objective professional norms of defense counsel.

Had Dr. Getachew received competent counsel during the plea negotiation process, he would have been able to properly weigh the risks and benefits of going to trial or taking a plea. Dr. Getachew simply did not have an appropriate frame of reference to make an informed decision on whether to take the government's offer or go to trial, and this prejudiced his ultimate decision to reject the offer and proceed to trial. Dr. Getachew's situation is similar to the cases cited above, which found a presumption of prejudice based on substantial disparities between the proposed offer and the ultimate sentencing liability if found guilty at trial. Currently, with an acquittal of 4 of the 15 Counts he was charged with, Dr. Getachew is facing 33 to 41 months in prison according to the guidelines. This is a substantial departure from the proposed recommended sentence in the plea, which contemplated probation. For a man of Dr. Getachew's age, even the lower range of the potential prison sentence is a significant amount of prison time to contemplate. This disparity is sufficient to establish a reasonable probability that had Dr. Getachew been properly informed and advised, he would have accepted the prosecution's offer. This trial liability was never properly explained to Dr. Getachew, as acknowledged by Attorney O'Brien. The prejudice prong is presumptively satisfied in Dr. Getachew's case.

Attorney O'Brien's performance during the plea negotiation process fell below an

objective standard of reasonableness. It is an objective standard of competence for a defense attorney to spend time discussing a plea offer with their client prior to agreeing to proceed to trial, certainly more than a single paragraph in an email. There is a reasonable probability that, but for the deficiency, the outcome of the proceedings would have been different. Therefore, Dr. Getachew received ineffective assistance of counsel under the *Strickland* test, in violation of his Sixth Amendment right.

## CONCLUSION

Dr. Getachew was not properly counseled regarding the plea offer and possible penalties if he were to plead guilty, or the possible penalties if he were to be found guilty of all counts of the indictment. His decision to go to reject the Government's plea offer and proceed to trial was effectively uncounseled in violation of his rights under the Sixth Amendment. As such, Defendant requests this Court vacate the judgment of guilt and grant a new trial in the interest of justice pursuant to Federal Rule of Criminal Procedure 33(a).

Respectfully submitted,
**Taft Stettinius & Hollister LLP**

**/s/ David H. Thomas**
DAVID H. THOMAS
Ohio Supreme Court No. 0071492
P: (614) 334-6199
dthomas@taftlaw.com

**/s/ Lizett Schreiber**
LIZETT M. SCHREIBER
Ohio Supreme Court No. 0084708
41 South High Street, Suite 1800
Columbus, Ohio 43215
P: (614) 334-6139
F: (614) 221-2007
lschreiber@taftlaw.com

Counsel for Defendant

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed with the Clerk of Court for the United States District Court for the Southern District of Ohio using the CM/ECF system, which will send notification of such filing to all counsel of record on September 15, 2023 by electronic mail.

**/s/ David H. Thomas**
DAVID H. THOMAS